UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ISAAC CORNELIUS FRICKS, SR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:22 C 50410 |
| ) | |
| OFFICERS BRIAN PRINE and DaCODA ) | Judge Rebecca R. Pallmeyer |
| VANVLEET, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Isaac Fricks ("Fricks") has sued Rockford Police Officers Brian Prine ("Officer Prine") and DaCoda VanVleet ("Officer VanVleet") (collectively "Defendants"), alleging that Officer Prine used excessive force when taking an admittedly uncooperative Fricks into custody in a transport van on September 9, 2021, and that VanVleet failed to intervene. Defendants have moved for summary judgment, arguing that there is no genuine dispute that Officer Prine's use of force was reasonable given Fricks's resistance, and that Officer VanVleet did not have a duty to intervene because he did not observe nor know of what was unfolding between Officer Prine and Fricks in the transport van. Defendants additionally raise the affirmative defense of qualified immunity. For the reasons that follow, the motion is denied as to Officer Prine and granted as to Officer VanVleet.

## FACTS

Both sides have complied with this court's Local Rule 56.1. Their submissions, including a videotape of the incident, support the following findings, many of them uncontested:

In the early morning of September 9, 2021, Rockford police officers (who are not parties to this case) were searching for Fricks, who was wanted on outstanding warrants for aggravated battery, domestic battery, aggravated domestic battery, and telephone harassment. (Pl.'s Resp. to Def.'s LR 56.1 Stmt. [77] ¶¶ 1-4.) At 12:38 a.m., the officers located Fricks's Black Ford Edge

and conducted a traffic stop. (*Id.* ¶ 5.) Fricks attempted to flee, but a squad car parked behind him prevented him from backing away. (*Id.* ¶ 6.) The officers, who were aware that Fricks was known for carrying weapons, observed him reaching for something below his seat and ordered him to exit the vehicle. (*Id.* ¶ 7.) Fricks did so, but then refused their instruction to get on the ground. (*Id.* ¶ 8.) What happened next is not clear from the record, but once he was finally handcuffed, Fricks threatened to spit on the officers and turned his head towards them; at this point, one of the officers took Fricks to the ground. (*Id.* ¶ 9.)

The Defendant Officers, Prine and VanFleet, were operating the Rockford Police Department transport van that night. Prine and VanVleet were called to pick Fricks up and transport him to Winnebago County Jail. (*Id.* ¶ 10.) A video recording taken from the compartment of the transport van captured their encounter with Fricks. (Video Recording [75]). That video, which the parties agree is accurate, shows that the compartment had a small bench on one side, a narrow aisle on the other, and no place where a detainee would be secured from movement apart from handcuffs. (Pl.'s Resp. ¶¶ 11-13.) Before the door to the compartment was opened, Fricks can be heard loudly demanding medical attention for injuries to his face (presumably inflicted by the arresting officers, prior to the arrival of Prine and VanVleet). (*Id.* ¶ 14.) At least three officers told Fricks to get into the van, but Fricks refused. (*Id.* ¶ 15.) Officers then placed Fricks in leg shackles and warned him that his refusal to get into the van constituted resisting. (*Id.* ¶¶ 16-17.) Yelling about having been struck by the arresting officers earlier, Plaintiff warned, "On my life, whoever hit me, that m—f— that hit me, they are going to die." (*Id.* ¶ 18.) He continued making verbal death threats throughout the encounter.

The van door eventually opens. As shown in the video, in his effort to push Fricks—who is seen standing with his back to the van—into the transport vehicle, Officer Prine used force to hoist Fricks' legs over his head. (Video [75] at 4:20 to 4:23.) Fricks is heard saying, "y'all ass having a hard time, bitch." (Pl.'s Resp. to Def.'s LR 56.1 Stmt. [77] ¶ 19.) Officer Prine then continues to climb into the van and on top of Fricks as he rolls him back with his legs over his

2

head. (Video [75] at 4:20 to 4:23.) Defendants assert that Officer Prine then "struck Fricks' left thigh three times in an effort to get Fricks to stop resisting," but Fricks contends that Officer Prine punched him in the face twice and, as Fricks moved away, Officer Prine landed a third blow on Fricks' leg. (Pl.'s Resp. to Def.'s LR 56.1 Stmt. [77] ¶ 20.) The video confirms that Officer Prine punched Fricks three times, but because Fricks was positioned with his back and head on the ground and legs folded above him, it is difficult to see whether he was hit in the leg or face. (*See* Video [75], 4:24 to 4:26.) At this point, although Fricks was vocal, he does not appear to be kicking out or moving considerably. After the punches, Fricks kicks out his leg and hits Officer Prine in the face, which Fricks characterizes as an act of self-defense. (Pl.'s Resp. to Def.'s LR 56.1 Stmt. [77] ¶ 21.)

    At this point, Officer Prine grabbed Fricks by his hair and asked, "Did you just kick me in the f—ing face?" (*Id.* ¶ 22.) When Fricks admitted that he had, Officer Prine grabbed more of Fricks's hair and held it for nine seconds as he pushed Fricks's head toward the wall of the compartment with a hand on Fricks's neck. (*Id.* ¶¶ 22, 23.) Defendants assert that Officer Prine grabbed Fricks by the hair to prevent him from spitting, but Fricks denies that there was any reference to spitting, and the video supports Fricks in this regard: it shows that immediately after being kicked, Prine grabbed Fricks's hair, pulling it hard with both hands and pushing his face toward the wall as he warned, "you don't kick me in the face, you understand that?" (Video [75] at 4:36 to 4:39.)

    Because Fricks was not in a safe position in the van, Officer Prine "adjusted Fricks' body so that Fricks was on his knees," and then backed away from Fricks. (Pl.'s Resp. to Def.'s LR 56.1 Stmt. [77] ¶¶ 24, 25.) As Prine backed away, Fricks warned him, "My dad gon' have your name," and then stood up and repeated the warning: "On my life, my dad gon' have your name." (*Id.* ¶ 26.) Officer Prine reentered the van, pushed Fricks' face into the bench, and asked Fricks, "Are you done?" (*Id.* ¶ 27.) Fricks slid from the bench to the floor of the van and as Prine again backed out of the transport van, Fricks again attempted to follow him, repeating, "You might as

3

well kill me!" (*Id.* ¶¶ 28, 29.) Officers attempted to close the door, but Fricks was able to hold them off for two minutes by sticking his foot out of the entrance, while shouting at Officer Prine for his name and calling him a "bitch." (*Id.* ¶¶ 30-32; Video [75] at 5:20 to 5:40.)

It is undisputed that Fricks's contact with Officer Prine inside the transport van lasted no more than one minute; that Officer Prine did not at any point place his knee on Fricks's head; that Fricks was "extremely combative, angry, belligerent, uncooperative, and profane"; and that Fricks threatened to kill several officers and their families, including that of Officer Prine. (Pl.'s Resp. to Def.'s LR 56.1 Stmt. [77] ¶¶ 33-36.) Defendants contend that after arriving at the jail, Fricks spit on Officer Prine's face and chest; Fricks notes that there is no mention of this in Defendant's Incident Report, but he does not deny it. (*Id.* ¶ 37.)

Fricks has named Officer VanVleet as a Defendant as well and alleges that VanVleet failed to intervene in Prine's use of excessive force. Defendant VanVleet, who has been performing "squadrol recovery of arrested citizens" for more than 25 years, acknowledges that he has a duty to ensure the safety of an individual in custody. (*Id.* ¶¶ 54-56.) Fricks contends VanVleet and other officers assisted Prine in placing Fricks into the van; VanVleet has not directly denied this beyond pointing out that he himself was not identified in the video. (*Id.* ¶ 52.) But Fricks does not recall interacting with Officer VanVleet, and admits that VanVleet did not see Prine striking him. (*Id.* ¶ 42). He nevertheless contends that as Officer VanVleet was on the scene, VanVleet must have had knowledge of Officer Prine's conduct. (*Id.* ¶¶ 38, 39, 42.) Officer VanVleet, for his part, recalls seeing Officer Prine enter the van and hearing loud noises from inside, but says he does not know what was happening inside. (Def.'s Resp. to Pl's LR 56.1 Stmt. [79] ¶¶ 50, 51.) VanVleet testified that he was unable to see past Officer Prine due to the size of the compartment; he also recalls assisting in the effort to close the van door after Officer Prine exited. (*Id.* ¶ 53.)

Officers Prine and VanVleet were both disciplined as a result of this incident—not for the use of force itself, but for their failure to complete what the parties refer to as a "use of force Blue Team," evidently a report on an officer's use of force with a citizen. (*Id.* ¶ 57; Ex. 6 to Def.'s

4

Mot. 27:13-23). Prine was disciplined for his failure to report the use of force at the transport van, and both Defendants were disciplined for failure to report the use of force in a later incident with Fricks at the jail, which is not at issue in this lawsuit. (Def.'s Resp. to Pl's LR 56.1 Stmt. [79] ¶ 57.)

Fricks contends he suffered a "hyperflexed" right hand as result of Prine's placing his knee on Fricks's right wrist/thumb while he was in the van, as well as an abrasion to his forehead. (Pl.'s Resp. to Def.'s LR 56.1 Stmt. [77] ¶¶ 43, 44.) Fricks was x-rayed and treated at the jail with over-the-counter pain medication. (*Id.* ¶ 45.) He did not require physical therapy or surgery and has fully recovered from his injuries, other than a scar on his forehead. (*Id.* ¶ 46.) It is not clear whether the scar was caused by the altercation with Officer Prine or a different incident.

Fricks was charged with aggravated battery of a police officer, threatening a public official, and resisting a peace officer; he pleaded guilty and was sentenced to four years, and is currently incarcerated at the Jacksonville Correctional Center. (*Id.* ¶¶ 47-49.)

## DISCUSSION

### I. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court construes the evidence in the light most favorable to the non-movant and draws all reasonable inferences from that evidence in their favor. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (citations omitted).

II.	**Summary Judgment as to Defendant Prine**

The court first turns to the Defendants' motion for summary judgment as to Officer Prine. Both parties rely on video footage, and when the events are captured on undisputed video footage, courts need not credit a party's version of facts that is "blatantly contradicted" by the video, or where no reasonable jury would believe their version of the facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A.	**Excessive Force**

Claims of excessive force are governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The *Graham* inquiry requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests," such as officer safety. *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (quotations omitted). The court must evaluate the use of force "from the perspective of the officer on the scene," not with 20/20 hindsight. *Id.* Because of this, "[n]ot every push or shove, even if it may later seem unnecessary," will violate the Fourth Amendment. *Id.* at 396. In other words, even if officers misjudged a situation or could have handled a crisis better, that does not automatically mean their eventual use of force was unconstitutional. In conducting the *Graham* balancing test, a court must weigh the totality of the circumstances, "including facts and events leading up to the" use of force, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Barnes v. Felix*, 605 U.S. 73, 76 (2025); *Graham*, 490 U.S. at 396.

In evaluating the episode at issue here, the court acknowledges that the episode of force was not lengthy and that "[f]orce [ ] becomes increasingly severe the more often it is used; striking a resisting suspect once is not the same as striking him ten times." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010). Force that is excessive in one moment may be fully justified in another. Further, the court recognizes that Fricks was uncooperative and verbally threatening

6

towards the officers during their attempts to secure him inside the transport van, and that his injuries were minimal.

On the other hand, at the time of Officer Prine's use of force, Fricks was being arrested for a warrant that had been issued more than three weeks prior, and there is no indication that he was armed. When Officer Prine began punching Fricks, Fricks was already restrained with both handcuffs and leg shackles, was inside the transportation van, and was lying on his back, limiting the risk that he could escape and the degree of threat he could pose to the officers' safety. Defendants contend that the severity of the crimes for which Fricks had outstanding arrests shifts that factor under *Graham* in their favor. It is accurate that Fricks was under arrest for multiple crimes involving assault and battery, committed nearly a month earlier. Finally, although the video does not answer all questions, it appears that Fricks kicked out at Officer Prine only *after* being punched.

In determining whether there is a dispute of fact as to whether Prine used excessive force, Fricks argues that Officer Prine did not need to enter the van to begin with, much less proceed to hit him. (Pl.'s Opp. [78] at 2.) The court is less certain; it is difficult to discern from the video whether entering the van was necessary, as the scene is somewhat chaotic. Defendants assert that once in the van, Officer Prine "struck Fricks's left thigh three times in an effort to get Fricks to stop resisting," but Fricks contends that Officer Prine twice punched him in the face and, as Plaintiff moved away, landed a third blow on Fricks's leg. (Pl.'s Opp. to Def.'s LR 56.1 Stmt. ¶ 20.) The video recording does not undisputedly confirm either party's version, but Fricks is in the van, restrained by handcuffs and leg shackles, head down on the floor, with Officer Prine on top of him when the punches come down. If a jury finds that Officer Prine was punching Fricks's face rather than his legs, the jury could infer that those punches were not necessary to subdue Fricks.

Another point of dispute is over Fricks's kick. Fricks characterizes it as an act of self-defense in response to Officer Prine's strikes. (Pl.'s Opp. to Def.'s LR 56.1 Stmt. ¶ 21.) When excessive force is used, at least some jurisdictions "recognize the arrestee's right to respond with

7

reasonable resistance." *Gibbons v. Higgins*, No. 94–2636, 1995 WL 761743 at *4 (7th Cir. Dec. 20, 1995). "[U]nder Illinois law, when it otherwise would be a violation of law to resist an arrest by a police officer, even an unlawful one, an individual has the right of self-defense when an officer is using excessive force." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 n.2 (7th Cir. 2008) (citing 720 ILCS 5/7–1). Fricks does not dispute that he made contact with Officer Prine, but he described this move in his deposition as more like a "spasm." (Frisch Dep., Ex. 5 to Def.'s Mot. [73] at 29:15-19). And from the video, it is clear that he was turned away from Officer Prine at the time of the kicks. Because there are genuine disputes of material fact as to whether Officer Prine used excessive force in punching Fricks, the court also finds that a reasonable jury could find that Fricks subsequently acted out of self-defense.

The last main point of dispute concerns Officer Prine's use of force following the kick. It is uncontested that Officer Prine grabbed Fricks by his hair and asked, "Did you just kick me in the f—ing face?" (Pl.'s Opp. to Def.'s LR 46.1 Stmt. ¶ 22.) When Fricks admitted that he had, Prine grabbed more of Fricks's hair and held it for nine seconds as he pushed Fricks's head toward the wall of the compartment with a hand on Fricks's neck. (*Id.* ¶¶ 22, 23.) Defendants assert that Prine grabbed Plaintiff by the hair to prevent him from spitting—behavior that Prine says he has experienced with other detainees. Prine may well have had a justified fear of this, but as Plaintiff notes, there is no reference in the video to spitting. Instead as noted, the footage shows that immediately after being kicked, Prine grabbed Fricks by his hair, pulling it hard with both hands as he warned, "you don't kick me in the face, do you understand that?" (Video [75] at 4:36 to 4:39.)

One could reasonably infer that Officer Prine pulled Fricks' hair and pushed his head against the wall in retaliation for having been kicked. But an officer's "intent in using force is irrelevant in a Fourth Amendment case. Only its reasonableness matters—which means whether it was excessive in the circumstances, because if it was, it was unreasonable." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 526 (7th Cir. 2012). In *Phillips*, the Seventh Circuit took the officer at

their word that their goal was to gain compliance as opposed to "hurt or punish [the plaintiff] gratuitously" but nevertheless reversed a jury verdict in favor of officers who had shot plaintiff four times in the leg after she disregarded their orders to exit her car. 678 F.3d 513, 526 (7th Cir. 2012). In this case, the court must decide whether Prine's conduct in pulling Fricks's hair and twisting his head is excessive regardless of the reason for that conduct.

Fricks's continued physical resistance while handcuffed and his conviction on a charge of resisting a peace officer is, however, relevant to the analysis. Defendants cite to *Strand v. Minchuk* for the proposition that an officer is free to use force until "an individual who once posed a threat become[s] subdued and complying with the officer's orders." 910 F.3d 909, 915 (7th Cir. 2018). In *Strand*, a truck driver engaged in a one-on-one fight with an officer, "punching [the officer] at least three times in the face and placing his hands on [the officer's] throat." *Strand*, 910 F.3d at 912. Both men fell to the ground, but plaintiff stood up, backed away, "put his hands up, and said 'I surrender'"—at which point the officer shot him in the abdomen. *Strand*, 910 F.3d at 912. Affirming the denial of summary judgment on the truck driver's claim of excessive force, the court observed that the record leaves "unclear whether the rapidly-evolving nature of the altercation justified [defendant officer's] use of force, or whether he had time to recalibrate the degree of force necessary, in light of plaintiff's statement of surrender." *Id.* at 916. *Strand* involved the use of deadly force, which is not at issue here. But as in *Strand*, the record here is somewhat ambiguous in that while Fricks was resisting, he was also physically restrained and already in the transportation vehicle.

Like the plaintiff in *Strand*, Fricks was found guilty of battery of a police officer; Fricks also pleaded guilty to resisting arrest. That conviction does not by itself bar his claim. In *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), the Seventh Circuit recognized that an individual convicted of resisting arrest would not be free to argue that officers used force despite his non-resistance; such a claim would be barred by the conviction. *See id.* at 364 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). But allegations that an officer used excessive force to effect

9

custody above what the plaintiff's resistance required, or used excessive force after the plaintiff was taken into custody, are not inconsistent with a conviction for resisting. *See id.* In *Puch v. Vill. of Glenwood,* No. 05 C 1114, 2012 WL 2502688 (N.D. Ill. June 27, 2012), the plaintiff was convicted for resisting or obstructing a police officer, which involved an alleged push during the arrest process. The court denied summary judgment on his excessive force claim, observing that such a claim may be viable if "excessive force [was] used to effect custody above what the plaintiff's resistance required" or "excessive force [was] used after the plaintiff was reduced to custody." *Id.* at *4. The court observed that the plaintiff claimed that the officer "tortured" him with handcuffs and used the handcuffs "as a weapon to create pain" even after he was in custody. *Id.* at *5. That evidence, "taken in the light most favorable to him, arguably suggests that [defendant officer] used excessive force to effect custody, above what [plaintiff's] resistance required, and that [defendant] used excessive force" even after the plaintiff had been "reduced to custody." *Id.*

Defendants cite to *Hennings v. Milone*, No. 21-1533, 2021 WL 5412336 (7th Cir. Nov. 19, 2021) for the proposition that Officer Prine's grabbing of Fricks's hair after being kicked is not objectively unreasonable. (Def.'s Mem. on Mot. [73-13] at 7-8.) But in affirming summary judgment for the defendant officer, the *Hennings* court considered circumstances meaningfully distinguishable from the ones at issue here. There, the suspect had just led police on a high-speed chase in a car that had matched one seen in an armed robbery. A "recording [ ] show[ed] that [the officer] had legitimate reason to fear [that the suspect], far from surrendering, was trying to run away." *Hennings*, 2021 WL 5412336 at *2. Consequently, the officer's "quick decision to grab a reachable, non-threatening part of [suspect's] body [his hair] to quell him, protect himself and others, and prevent flight" was deemed reasonable. *Id.*

The case is a close one, but the court concludes that despite Fricks's conviction for resisting arrest and battery, a reasonable jury could find that Officer Prine's use of force was excessive in response to the resistance Fricks posed, or that when Officer Prine began punching him, Fricks was no longer actively resisting given his position in the van.

10

B.     Qualified Immunity

Even if Officer Prine used excessive force, he is shielded from liability if his conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Siler v. City of Kenosha*, 957 F.3d 751, 758 (7th Cir. 2020). Where a defendant has raised the qualified immunity defense, the plaintiff bears the burden of defeating that claim. *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). To do so, Fricks must demonstrate (1) that the facts, viewed in the light most favorable to him, make out a deprivation of a constitutional right, and (2) "that their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Gaddis v. DeMattei*, 30 F.4th 625, 632 (7th Cir. 2022). Having found disputes of fact on the question of whether Officer Prine violated Fricks' constitutional right by using excessive force, the court turns to the second prong of the analysis.

A plaintiff can pursue one of three avenues to prove that a right was clearly established at the time of the alleged misconduct. A plaintiff can identify "in the relevant caselaw 'such a clear trend . . . that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620 (7th Cir. 2022*)* (quoting *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018)). Fricks does not make this argument. Next, a plaintiff can argue that the defendants' conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Id.* at 620-21 (internal quotations omitted). This option is rare, and also not raised by Fricks. Finally, a plaintiff can defeat summary judgment on the qualified immunity defense if he can identify a closely analogous case holding that defendant's actions in the alleged circumstances were unlawful. *Stockton*, 44 F.4th at 620. In determining whether this test is met, the court must "look at past cases with specificity." *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 988 (7th Cir. 2021), but a "case holding that the exact action in question is unlawful is not necessary." *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016).

11

In his opposition to Defendants' motion for summary judgment, Fricks argues that the "conduct alleged and shown was a violation of an established constitutional right to be free from excessive force in violation of the Fourth Amendment." (Plaintiff's Opp. [78] at 4.) Defendants observe in response that "this general definition of the right at issue is improper" on account of its lack of specificity. (Defendants' Reply [80] at 6–7 (citing *City of Escondido v. Emmons*, 586 U.S. 38, 43 (2019)).) In their view, the "appropriate question is whether Office Prine violated clearly established law when he punched Fricks, rolled him onto his back, pinned him to the floor of the van, and pulled his hair in an effort to get Fricks to comply while Fricks was actively resisting in the enclosed compartment of the transport van." (*See Id.* at 7.) The court agrees with Defendants. The proper inquiry is whether, drawing inferences in the light most favorable to Fricks, Officer Prine violated clearly established law when he punched Fricks, grabbed his hair, and pushed his head into the wall in the van.

It is well-recognized that reasonable force is acceptable when necessary to carry out a lawful detention. *Turner v. City of Champaign*, 979 F.3d 563, 569 (7th Cir. 2020). It is also clear that the use of unnecessary force against a restrained detainee violates the Fourth Amendment. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (involving handcuffed detainee smacked around while lying on the ground); *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) (involving handcuffed detainee who had ribs broken after he refused to get into squad car without attempting to flee or physically resisting officers); *Montalva v. Park Ridge Police Dept*, 170 F.Supp.2d 800 (N.D. Ill. 2001) (involving detainee caught while attempting burglary, handcuffed, and then beaten by officer).

This case is a close one, as Fricks can be seen resisting at certain points, but was also somewhat under the control of the officers and in the van at the time Officer Prine used force. To show that Prine violated clearly established case law, the plaintiff must identify an established right with some specificity, but need not identify a case in which the circumstances are identical to those at issue. Instead, the plaintiff must define the right in a way that draws "sufficiently clear

[contours] that a reasonable official would understand what he is doing violates that right." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 725 (7th Cir. 2013) (quotations omitted). In this case, Plaintiff cites to *Gupta v. Melloh*, 19 F.4th 990 (7th Cir. 2021), *Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014), and *Sallenger v. Oakes*, 473 F.3d 731 (7th Cir. 2007) for the proposition that it is well established that the use of force on a handcuffed or subdued arrestee is unreasonable. Although these cases are not on all fours with this one, they provide guidance.

In *Sallenger v. Oakes*, in affirming the denial of summary judgment on qualified immunity, the Seventh Circuit concluded that a reasonable officer would have known he violated clearly established case law when he "administer[ed] closed-fist punches and flashlight blows, including ones to the head, after the arrestee was handcuffed, continu[ed] to strike him after he had stopped resisting arrest and fail[ed] to place him in the proper position after hobbling him," such that he eventually died from being unable to breathe. *Sallenger*, 473 F.3d at 742. Sallenger's injuries were obviously far more serious than Fricks's—but his case is similar in that Officer Prine administered closed-fist punches to Fricks's head while Fricks was handcuffed, on his back with his feet folded over himself, and underneath Officer Prine in the van, and then grabbed Fricks's hair and twisted his head after Fricks was restrained.

In *Miller*, the Seventh Circuit observed that it is clearly established that an officer "cannot use 'significant' force on suspects who are only passively resisting arrest," and affirmed the denial of summary judgment on the arrestee's § 1983 claim. *Miller*, 761 F.3d at 829 (citations omitted). Again, the plaintiff's injuries were more serious than Fricks's: the officer in *Miller* deliberately brought down a knee on the plaintiff's jaw, breaking it, while the plaintiff was motionless, spread-eagled on the ground, and subdued at gunpoint. Fricks was not in such a position, and in *Miller*, the officer could see *before* he used force that the plaintiff was prone and subdued at gunpoint. Here, it is less clear whether Fricks was "subdued" at the point that Officer Prine used force. Fricks was cuffed, in the van, and on his back, but still moving considerably and had just kicked Officer Prine in the face. As *Miller* acknowledged, the "prohibition against significant force against

a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Id.* at 829. Still, because Fricks remained uncooperative throughout this episode, it is difficult to compare this situation to *Miller*.

In *Gupta*, the court reversed a grant of summary judgment on qualified immunity in favor of an officer who had forcibly tugged a handcuffed, intoxicated man who, although somewhat disorderly, posed no threat to the officers or others given his restraints. As there was no immediate need to move the man, he was not threatening violence, and his crime—public drunkenness— was "not at all severe." *Gupta*, 19 F.4th at 1001. The episode resulted in plaintiff's suffering from a fractured vertebra and bleeding in his nose and mouth. *Id.* at 995. The court observed that "[o]ur case law has long put police officers on notice that they 'do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.'" *Id*. at 1001 (citations omitted). In this case, Fricks was already handcuffed and arguably posed no threat to the officers when Officer Prine punched him. Still, it could not be said that Prine acted "without any provocation," nor that Fricks suffered any serious injury. Instead, here, we have a conviction for resisting arrest, evidence that the plaintiff made verbal threats and was uncooperative, and admission that he was "extremely combative, angry, belligerent, uncooperative, and profane." Even after Prine's use of force, Fricks attempted to follow him out of the van, and was able to keep officers from closing the door for two minutes while pushing back at them with his foot. Nor did he suffer serious injuries; true, a "[p]laintiff is not required to show injury to succeed on an excessive force claim, [but] it is evidence of the degree of force imposed and the reasonableness of that force." *McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010).

Again, this case is a close one. Fricks was handcuffed, unarmed, and lying on his back with his feet folded over him in the van at the time Officer Prine used force. The crimes for which he was arrested took place weeks earlier. The video does not clearly show whether Officer Prine was punching Fricks in the head or the thigh, but he does so three times, and pulls Fricks hair in what appears to be an effort to punish Fricks for the kick. Further, a jury could find that Fricks

14

was subdued by the time he was punched, and/or when he was pulled by his hair and pushed against the wall.

As in *Gupta,* where the entire encounter was also captured on a video that did "not hand a slam dunk to either party," "[a] reasonable juror could determine any number of things from" the video, "and reasonable jurors could certainly disagree about what it reveals about the events of the night." *Gupta v. Melloh*, 19 F.4th 990, 998 (7th Cir. 2021). A juror could conclude that at the moments Officer Prine punched Fricks or grabbed his hair and twisted his head, Fricks was subdued and not a real risk to anyone's safety. A juror could also conclude that Fricks was actively resisting in that moment such that it warranted the force Officer Prine used. A juror could conclude that Officer Prine was deliberately punching Fricks' face, or that Officer Prine was merely attempting to subdue Fricks.

The court is also guided by *Pryor v. Corrigan*, 124 F.4th 475 (7th Cir. 2024), where the Seventh Circuit affirmed the district court's conclusion that an officer had qualified immunity from liability for having tackled a fleeing suspect who ran away, but not for punching the suspect once after the tackle and a second time after the suspect was handcuffed. *Pryor v. Corrigan*, 124 F.4th 475, 490 (7th Cir. 2024). The district court had concluded, and the Seventh Circuit agreed, that the video of the punches was "subject to both interpretations: a reasonable jury could watch the video and conclude that [the plaintiff] was docile, or that [he] was resisting in some way during both strikes." *Pryor v. Corrigan*, No. 17-CV-1968, 2021 WL 1192581, at *16 (N.D. Ill. Mar. 30, 2021), *aff'd*, 124 F.4th 475 (7th Cir. 2024). Here, a reasonable juror could find that Fricks was not resisting when Officer Prine used force, and that Officer Prine's force was excessive.[1]

The court recognizes that Fricks was not seriously injured, and that his own belligerent behavior (including shouting, threatening violence, and resisting) may well undermine a jury's

---

[1] The court notes that the criminal complaint against Fricks for resisting arrest states that he resisted when he refused to get on the ground and threatened to spit on officers, which occurred before the incident at the van. (Ex. 9 to Def.'s Mot. [73-9] at 3).

15

sympathy for his alleged suffering. Nevertheless, "[w]hen the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

### III.     Summary Judgment as to Defendant VanVleet

Plaintiff also brings a claim against Officer VanVleet for failure to intervene. "A police officer can be liable for another officer's excessive force only if that officer had a realistic opportunity to intervene and stop the first officer's actions." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Id.* at 826.

Several facts have been established as to Officer VanVleet: he was on the scene, in proximity of the transport van; he heard loud noises coming from the van at a time when Officer Prine was in the van with Fricks; and the transport compartment was extremely narrow and wide enough for only one adult male. Plaintiff contends that VanVleet stood "outside the door watching his partner use excessive force on Fricks," and that he must have reached the "obvious conclusion [ ] that Fricks was being subjected to inappropriate conduct." (Pl.'s Opp. [78] at 5.) Defendants deny that VanVleet could see any of "Prine's interactions with Fricks because of the small space" (Def.'s Reply [80] at 9), and video evidence supports Defendants' characterization of Van Vleet's ability to observe Prine's conduct, which both sides agree was brief.

Critically, Plaintiff admits that Officer VanVleet did not see Officer Prine striking Fricks. (Pl.'s Resp to Def.'s LR 56.1 Stmt. [77] ¶ 42.) The court notes, further, that much of the loud noise VanVleet likely heard was made by Fricks's own shouting at and threatening of the officers, and the length of time Prine spent in the compartment was in large part a function of Plaintiff's own uncooperativeness. Plaintiff did not cite any additional evidence aside from the video footage that would establish VanVleet's knowledge of what was occurring, and the court has not identified any such evidence. Even if VanVleet saw the remainder of the interaction, which in total took less

16

than a minute, he would not have had a reasonable chance to intervene. The court grants summary judgment in his favor.

For the reasons stated, the court grants summary judgment as to Officer VanVleet.

## **CONCLUSION**

The motion for summary judgment [73] is granted as to Officer VanVleet and otherwise denied.

ENTER:

Date: September 29, 2025

_____
REBECCA R. PALLMEYER
United States District Judge